OPINION OF THE COURT
Gerald Sheindlin, J.
The defendants were indicted for various crimes including riot in the first degree, conspiracy in the second degree, promoting prison contraband in the first degree, criminal possession of a weapon in the fourth degree, attempted murder in the second degree and assault in the first and second degrees arising out of an inmate riot at Rikers Island. The defendants (except Bilal) moved for suppression of identification on the grounds that such evidence was obtained in violation of their constitutional rights. (United States v Wade, 388 US 218 [1967].)
A Wade hearing was held before this court from May 26, 1992 to June 25, 1992 (except for defendant Burthey). At that hearing the People called Captain Marc Bullaro and Correction Officers Frederick Biggs and Daniel Isaac. All defendants were present for this testimony. Pursuant to sanctions imposed upon the People for their failure to preserve handwritten notes and complete transcripts of the photo arrays and lineups, the People were compelled to call 20 additional correction officers in order to establish the independent source for each witness’ in-court identification. Various defendants were excluded during this independent source hearing (see, People v Cook, NYLJ, Aug. 14,1992, at 25, col 5).
This court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
The court finds that the testimony of Captain Bullaro, Officer Biggs and Officer Isaac to be trustworthy, consistent and to have the force and flavor of credibility.
The court finds that on July 13, 1990, 52 Muslim inmates, including the defendants herein, attended a Muslim service at a Rikers Island facility. Subsequently, as the inmates were being escorted back to their housing areas, they stopped and refused to continue. The defendant Cook told Captain Gonzalez that they wanted to speak with an inmate who stabbed a fellow Muslim on July 12th. When the officers refused access to the inmate, a violent armed melee ensued. Numerous *603 correction officers were injured. The inmates were eventually subdued.
In August 1990, Captain Bullaro received various photos of inmates suspected to have been involved in the riot and was assigned to compile photo arrays. Subsequent to preparing the photo arrays, Officer Biggs conducted the actual photo arrays. Each separate photo array employed the same procedure. The proceedings and conversations between Officer Biggs and the viewing witnesses were simultaneously recorded in longhand in a notebook by a recording officer. After the proceedings were completed, Officer Biggs, using the handwritten notes of the proceedings, separated the trays which reflected the positive identifications. A typewritten transcript of the procedures, although inaccurate and incomplete, was prepared from the handwritten notes.
Lineups were subsequently conducted on Rikers Island with respect to eight particular targets. When the preparation for each lineup was completed, one viewing officer was escorted from the first floor waiting room to the second floor viewing room to join Officer Biggs and a recording officer. Again, the recording officer was responsible for recording in longhand in a notebook everything that was said. The viewing officer was instructed to look at the lineup and inform Officer Biggs whether the officer recognized any of the seated individuals as being involved in the riot. A typewritten "transcript” of the lineups was also prepared from the handwritten notes.
The handwritten notes of the lineups and photo arrays were inexplicably destroyed. Further, the typewritten "transcripts” prepared from the handwritten notes were inaccurate and incomplete. Accordingly, the court directed an independent source inquiry for each identifying witness. The court finds the testimony of each witness to be trustworthy, consistent and to have the force and flavor of credibility. (See, People v Cook, supra.)
Subsequent to the hearing concerning the nine defendants, the defendant Burthey was arrested pursuant to an indictment (I.B.N.A.). The defendant was granted a Wade hearing, with the sanction previously noted. This hearing was held on July 24, 1992. The parties stipulated that if Captain Bullaro, Correction Officer Biggs and Investigator Isaac were called to testify, their testimony on both direct and cross-examination would be the same as previously given in the codefendants’ previous hearing.
*604 Pursuant to this court’s direction that an independent source inquiry be conducted, the People called various witnesses. The court finds their testimony to be consistent and to have the force and flavor of credibility. (See, People v Cook, supra.)
CONCLUSIONS OF LAW

Sanctions

The court finds that the inexplicable destruction of the contemporaneous handwritten notes of the photo arrays and lineups and the fact that the typewritten transcripts prepared from the notes are incomplete and not fully accurate constitute a violation of CPL 240.44. Accordingly, sanctions pursuant to CPL 240.70 (1) must be imposed.
CPL 240.44 (1) requires the People to produce at a pretrial hearing "[a]ny written or recorded statement, including any testimony before a grand jury, made by such witness other than the defendant which relates to the subject matter of the witness’s testimony”. (People v Wright, 135 AD2d 594 [prosecution’s failure to produce a witness’ prior inconsistent statement required a de nova suppression hearing]; People v Manzione, 109 AD2d 755 [prosecution’s failure to produce several documents containing prior statements of prosecution witnesses required a de nova hearing]; People v Fulgham, 155 AD2d 687 [no violation of CPL 240.44 as missing document did not relate to any testifying witness at the hearing].)
A violation of CPL article 240 requires sanctions to be imposed. (People v Sacco, 141 Misc 2d 98.) The Court of Appeals noted that "[i]n fashioning an 'appropriate’ response to the prosecution’s wrongful failure to preserve evidence * * * the degree of prosecutorial fault surely may be considered, but the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society”. (People v Kelly, 62 NY2d 516, 520.) Accordingly, due to the failure of the prosecution to preserve the handwritten notes of the witnesses’ statements at the photo array and lineup procedures, this court has fashioned a sanction requiring an expanded hearing to explore the independent source for the identification of each defendant by each identifying witness the People intend to call at trial. The destruction of the notes surrounding the identification procedures have a direct impact upon the issues which must be determined at this Wade hearing. Accordingly, the sanction fashioned by this *605 court is to assume an inference of suggestibility thereby expanding the hearing to inquire into the independent source for the identifications. However, the inference being assumed, as a sanction, is rebuttable. Accordingly, the independent source issue need not necessarily be addressed if the defendant fails to meet their burden, as hereafter noted.

Burden of Proof

On a motion to suppress identification, the People have the burden of going forward in the initial instance to demonstrate that the photo array and lineup procedures conducted in this case were proper and nonsuggestive. Once this burden is met, the defendants have the burden of proving its illegality by a preponderance of the evidence. (People v Berrios, 28 NY2d 361; People v Malinsky, 15 NY2d 86.)

Photo Array

The court finds that, with the exception of the photo array of the defendant Mohammed, the People have met their burden of going forward to demonstrate that the procedures used in preparing and presenting the photo array and lineups were fair and nonsuggestive. Therefore, the inference created by the sanction has been rebutted. The defendants have not presented any evidence to establish the illegality of the procedures.
The photographs of the various defendants used in the arrays are similar to the fillers. There is nothing about the photographs which tend to suggest any defendant as the perpetrator. Accordingly, the court need not evaluate the independent source issue.

Lineups

The lineup procedures conducted clearly demonstrate that there was no suggestive conduct or statements made by the supervisory personnel or anyone else.
The court notes that many of the witnesses did not identify the defendants in both the photo array and the lineup. It is noted that some witnesses identified a filler in a lineup. The court finds that these circumstances lend great support to the conclusion that no suggestive activity was employed by anyone. The failure of various witnesses to identify various defendants in both the photo array and the lineup supports the *606 conclusion that these proceedings were fairly, objectively and properly conducted.
In summary, examination of all the photographs clearly demonstrates that the participants were sufficiently similar in appearance to each defendant in each lineup and any differences were insufficient to create a substantial likelihood of misidentification. (See, People v Chipp, 75 NY2d 327; People v Mason, 138 AD2d 411; People v Mattocks, 133 AD2d 89.)
Accordingly, this court concludes that the photo array and lineups were in fact fair and nonsuggestive. The People have overcome the inference of suggestibility created by the sanctions for their failure to preserve Rosario evidence. This court further concludes that the defendants have failed to meet their burden to establish a violation of the defendants’ rights. Therefore the defendant’s motion to preclude the lineup identification procedures and in-court identifications is respectfully denied.