OPINION OF THE COURT
Dakota D. Ramsetjr, J.
Defendant is charged with riot in the second degree (Penal Law § 240.05), obstructing governmental administration in the second degree (Penal Law § 195.05), and disorderly conduct (Penal Law § 240.20 [1]). Defendant moves, pursuant to CPL 100.40 and 170.30, to dismiss count one, riot in the second degree (Penal Law § 240.05), as facially insufficient.
This court has reviewed the submission of the parties and the court file. For the reasons set forth below, defendant’s motion to dismiss count one charging riot in the second degree (Penal Law § 240.05) is granted.
Factual Allegations
The factual allegations in the accusatory instrument allege, in pertinent part, that on or about May 17, 2014, at approximately 1:10 p.m. at the Robert N. Davern Center, Rikers Island, Correction Officer Jonathan Cofresi (CO Cofresi) observed defendant acting in concert with Anneury Flores, Travaughn Nourine, and Ruben Rodriguez (collectively, codefendants), along with separately charged defendants Brandon Benjamin, Mario Meruilus, Isaiah Bloome, and Raequan Clesca, in that CO Cofresi observed that they were “striking each other several times with closed fists.” It is further alleged that CO Cofresi “ordered the defendants to stop fighting with each other and the defendants refused to comply.” The accusatory instrument further alleges that
“all the defendants’ above conduct prevented [CO Cofresi] from performing his official duty as a correction officer in that [he] was dressed in his official uniform and was responsible for keeping the peace, maintaining the good order and security of *831 the institution when this incident took place and defendants’ actions prevented [him] from completing his official duties.”
It is further alleged that “several institutional services and programs were stopped for approximately twenty (20) minutes in order for [CO Cofresi] to stop the defendants from fighting each other.”
Contentions
Defendant contends that count one charging Penal Law § 240.05 is facially insufficient in that it “fails to allege facts demonstrating that [defendant’s] conduct caused or created a grave risk of alarm in the community outside of the correctional facility in which the alleged fight occurred.” Defendant argues that the accusatory instrument lacks any indication that members of the public experienced alarm as a result of the fight, or that there was “any grave risk that members of the public could have been affected by the fight in any way.” Although it is alleged that the fight that took place inside of the Robert N. Davern Center, Rikers Island between a number of inmates at the facility temporarily delayed institutional services and prevented the correction officer from performing his official duties at the facility, there is no indication of a delay that would have affected members of the public as there are “no allegation [s] that any member of the public was involved in the fight, nor that the fight took place in a public area of the facility.” Nor is it alleged that members of the public became aware of the fight or had any other opportunity to experience public alarm. Given that the fight was “apparently contained within a controlled area of the facility,” defendant contends that the accusatory instrument fails to establish a grave risk that members of the public could have been affected or alarmed.
In support of his contention, defendant notes that, in 2005, the New York State Legislature affirmatively addressed the issue of whether fights taking place inside of a correctional facility met the “public alarm” requirement of riot in the first degree (Penal Law § 240.06). Defendant argues that under the former language of Penal Law § 240.06, the legislature found that participants in a large prison riot could not be charged without a showing that their conduct had caused public alarm in the community outside the facility. And, in response to what they perceived to be a loophole, the legislature chose to amend Penal *832 Law § 240.06 to add a subdivision prohibiting violent or tumultuous conduct inside of a correctional facility that causes or creates a grave risk of causing alarm within such facility. Because the legislature affirmatively opted not to amend Penal Law § 240.05, defendant contends that the legislative history of Penal Law § 240.06 therefore
“makes clear that violent or tumultuous conduct taking place inside of a correctional facility may only be penalized under Penal Law § 240.05 if there is a showing that public alarm occurred or that there was a grave risk that it would occur in the community outside of the facility.”
The accusatory instrument here makes no such showing.
In opposition to defendant’s motion to dismiss, the People argue that the accusatory instrument is a facially sufficient information “in that it is based upon the personal knowledge, observations and belief of the correction officer . . . and sets forth an accusatory and factual part.” The People recite the factual allegations in the accusatory instrument and argue that it “clearly establishes sufficient facts to meet the low standard required for facial sufficiency under each count charged.” In response to defendant’s contention that the People have failed to make out the crucial element of “public alarm,” the People argue that defendant “proposes a limited reading of the penal law charge of Riot in the Second Degree and its definition of public alarm.” The People contend that the accusatory instrument
“clearly sets forth that the conduct of defendant, along with seven other defendants, affected not only a location where individual members of the public are present, but also that these individuals [sic] lives, who are considered members of the community, were put at grave risk as a result of these defendant’s [sic] actions.”
In support of their contention, the People argue that the incident occurred in a “day room,” an area in which other inmates, correction officers, staff, and property were located. The People contend that a grave risk of public alarm was created by defendants’ fighting and preventing the correction officer from protecting the safety of these individuals and Rikers’ property. Additionally, the People contend that they have not only alleged that the actions of the defendants affected inmates, but also that the correction officer was prevented from keeping the peace, and maintaining the order and security of “the entire *833 institution and that several institution programs and services were shut down and completely stopped for a twenty minute period because of the threat defendant’s actions posed.”
In response to defendant’s contentions that his actions, by taking place inside of a correction facility, do not create a grave risk of public alarm to the outside community, the People contend that
“the threat of seven inmates fighting each other who refuse to stop when asked by a correction officer is exactly the type of conduct that the legislation intended to prevent under Penal Law § 240.05, which is fighting amongst four or more individuals which leads to more fighting, and a threat of violence and injury to not only the individuals fighting but also every other individual located around the area where the fighting is occurring.”
Further, the People argue that
“the fact that the fight in this case occurred inside a correctional facility does not change the defendants’ action from being violent and posing a risk to individuals of the public located inside the facility, nor does it remove the danger that the fighting amongst this particular group is alleged to have caused . . . [e] specially here, where the People have alleged the type of mob behavior involving actual striking, fighting, and physical force being administered by eight individuals in a small location, which by its very action is tumultuous and violent conduct that creates a grave risk or cause of public alarm.”
The People contend that if such conduct were allowed to go “unchecked” and could not be charged under riot in the second degree (Penal Law § 240.05), “there would be nothing to prevent the same fighting from breaking outside of the detention facility and into the public at large.” In support of their contention that riot in the second degree (Penal Law § 240.05) is not limited to fights occurring outside of correction facilities, the People cite People v Cook (152 Misc 2d 677 [Sup Ct, Bronx County 1992]) and People v Archer (155 Misc 2d 601 [Sup Ct, Bronx County 1992]), noting that the Supreme Court “has not found that a correction facility is a place where no grave risk of causing public alarm can be found.”
*834 Facial Sufficiency Standard
To be sufficient on its face, an information, or a count thereof, must substantially conform to the requirements prescribed in CPL 100.15, which, inter alia, provide that the factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges (CPL 100.15 [3]; 100.40 [1] [a]). Additionally, the allegations of the factual part of the information, together with those of any supporting depositions, must provide reasonable cause to believe that the defendant committed the offense charged, and such facts must be supported by nonhearsay allegations which, if true, establish every element of the offense charged and the defendant’s commission thereof (CPL 100.40 [1] [b], [c]). An information that fails to satisfy the prima facie requirement is jurisdictionally defective (see People v Alejandro, 70 NY2d 133 [1987]).
Riot in the Second Degree
Pursuant to Penal Law § 240.05, “[a] person is guilty of riot in the second degree when, simultaneously with four or more other persons, he engages in tumultuous and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing public alarm.” Although the term “public alarm” is not defined by statute (see Penal Law, art 240, “Offenses Against Public Order”), when determining whether the element is satisfied, courts generally consider “whether an act carries public ramifications.” (See People v Weaver, 16 NY3d 123, 128 [2011].) As the Weaver court noted:
“a common thread that ran through almost all of this legislation was a desire to deter breaches of the peace or, more specifically, of the community’s safety, health or morals. . . . And, although it has always been difficult to essay any precise definition of breach of the peace . . . , this court has equated that term with public inconvenience, annoyance or alarm, the governing phrase of our current disorderly conduct statute.” (Id. at 127-128.)
In light of how the New York Court of Appeals has construed the term “public alarm,” this court finds that the accusatory instrument herein is facially insufficient. To be facially sufficient, an accusatory instrument charging riot in the second degree (Penal Law § 240.05) must contain nonhearsay allegations which, if true, would warrant the conclusion that the de *835 fendant, simultaneously with four or more other persons, engaged in tumultuous and violent conduct, and in doing so, either acted with the conscious objective to cause or create a grave risk of causing public alarm, or was aware of and consciously disregarded a substantial and unjustifiable risk that public alarm would occur or that such circumstance existed. (See Penal Law §§ 240.05, 15.05 [1], [3].) Contrary to the People’s contention, here, the accusatory instrument does not allege that defendant’s conduct caused public alarm or that any members of the public were present. Rather, the allegations concerning defendant’s conduct are that (i) defendant and three codefendants, while acting in concert, and with four separately charged defendants, were observed “striking each other several times with closed fists”; (ii) such conduct “prevented [CO Cofresi] from performing his official duty as a correction officer”; and (iii) as a result of such conduct “several institutional services and programs were stopped for approximately twenty (20) minutes in order for [CO Cofresi] to stop the defendant[s] from fighting each other.” Such allegations, however, if true, are insufficient to establish the element of “public harm.”
Although the People assert in their opposition papers that defendant’s conduct “affected a location where individual members of the public are present,” and that the alleged incident occurred in a “day room,” neither the accusatory instrument nor the accompanying supporting deposition include such allegations. As such, this court cannot consider any allegations which the People advance in their motion papers exclusively, but which are not contained within the four corners of the accusatory instrument. (See People v Voelker, 172 Misc 2d 564, 569 [Crim Ct, Kings County 1997] [“in considering a motion to dismiss for facial insufficiency, the court is bound by the four corners of the accusatory instrument and may not consider extraneous allegations contained in a motion to dismiss or an answer to a motion to dismiss”].)
Nevertheless, even if the accusatory instrument were to include facts specifying the particular location within the correctional facility, such allegations alone would be insufficient to warrant the conclusion that defendant, through his conduct, intentionally or recklessly caused “public alarm,” as there are no allegations which, if true, establish that defendant’s actions carried public ramifications or created a risk thereof. In determining whether an individual’s conduct “recklessly ere *836 ated a risk” of public alarm, courts generally examine several factors which include “time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances.” (People v Baker, 20 NY3d 354, 360 [2013], citing People v Weaver, 16 NY3d 123, 128 [2011].) Here, the accusatory instrument contains no allegations concerning the number of other people in the vicinity, whether they were drawn to the incident and, if so, the nature and number of those attracted, or any other relevant circumstances.
This court is unpersuaded by the People’s assertion that the element of public alarm is satisfied here as the incident occurred in a location where other inmates, correction officers, staff members, and property are found. While the place of occurrence is among the factors considered in determining whether the element is satisfied, the accusatory instrument herein alleges that defendant’s conduct occurred inside Robert N. Davern Center, Rikers Island. There is no allegation that public alarm occurred or that there was a grave risk that it would occur in the community outside of the facility. And, although the People contend that other inmates, correction officers, and staff members “are considered members of the community” for the purposes of riot in the second degree (Penal Law § 240.05), such argument fails.
A review of the legislative history of riot in the first degree (Penal Law § 240.06) supports defendant’s contention that violent or tumultuous conduct taking place inside of a correctional facility may only be penalized under riot in the second degree (Penal Law § 240.05) if there is a showing that public alarm occurred or that there was a grave risk that it would occur in the community outside of the facility. As defendant correctly points out, the New York State Legislature amended riot in the first degree (Penal Law § 240.06) in 2005 to add a subdivision specifically prohibiting violent or tumultuous conduct inside of a correctional facility that causes or creates a grave risk of causing alarm within such facility. (See Penal Law § 240.06.) Indeed, the purpose of the 2005 amendment, as noted in the Sponsor’s Memorandum in Support of the bill, was to “make it possible to prosecute anyone who incites a riot while in prison without having to show that the riot caused public alarm outside of the prison in the surrounding community.” (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 294 at 3.)
*837 Prior to the 2005 amendment, the language of riot in the first degree (Penal Law § 240.06) was similar to the language of riot in the second degree (Penal Law § 240.05) — the distinction being that riot in the first degree (Penal Law § 240.06) required an additional showing that either a non-participant be injured or substantial property damage occurred, and a greater number of participants.* As amended, riot in the first degree (Penal Law § 240.06) now provides that a person is guilty of riot in the first degree when he:
“1. Simultaneously with ten or more other persons, engages in tumultuous and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing public alarm, and in the course of and as a result of such conduct, a person other than one of the participants suffers physical injury or substantial property damage occurs; or
“2. While in a correctional facility or a local correctional facility, as those terms are defined in subdivisions four and sixteen, respectively, of section two of the correction law, simultaneously with ten or more other persons, engages in tumultuous and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing alarm within such correctional facility or local correctional facility and in the course of and as a result of such conduct, a person other than one of the participants suffers physical injury or substantial property damage occurs.”
The justification for amendment of riot in the first degree (Penal Law § 240.06) was noted as follows:
“Under the current law, the crime of riot in the first degree requires a showing that the riotous conduct caused public alarm — meaning that the district attorney must show that the conduct that occurred within the prison also caused alarm in the *838 surrounding community.
“Under this bill, a showing of alarm within the prison would be sufficient to obtain a conviction and would act as a deterrent to those who would otherwise participate in a prison riot. The deficiency in the existing law became apparent in 1998 at Mohawk Correctional Facility when inmates who participated in a riot could not be charged with a felony for the act of rioting.” (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 294 at 3.)
Thus, as the review of the legislative history of riot in the first degree (Penal Law § 240.06) makes clear, riot in the second degree (Penal Law § 240.05) requires a showing that public alarm occurred or that there was a grave risk that it would occur in the community outside of the facility. As such, the People’s failure to allege facts demonstrating that defendant’s conduct caused or created a grave risk of alarm in the community outside of the correctional facility renders the accusatory instrument jurisdictionally defective.
Accordingly, defendant’s motion to dismiss count one charging defendant with riot in the second degree (Penal Law § 240.05) as facially insufficient is granted.

 Former Penal Law § 240.06 provided as follows:
“A person is guilty of riot in the first degree when “(a) simultaneously with ten or more other persons he engages in tumultouous [sic] and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing public alarm, and
“(b) in the course of and as a result of such conduct, a person other than one of the participants suffers physical injury or substantial property damage occurs.”