*Meyers v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand twenty.

PRESENT:
> RALPH K. WINTER,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

Charles Meyers, John Baker, Justin Strekal,
Miles Walsh,

> *Plaintiffs-Appellants*,

v.                                                                      19-892

City of New York, Michael R. Bloomberg,
individually and in his official capacity as
former Mayor of the City of New York,
Chief of Department Joseph J. Esposito,

individually and in his official capacity,
NYPD Commissioner Raymond Kelly,
individually and in his official capacity,
NYPD Patrol Officer Freddy Ynoa, Shield
# 18851, Hans Francois, Shield # 25825, John
Zaranis, Shield # 09645, Vasile Dubovici,
Shield # 28892,

*Defendants-Appellees*

Officer Does 1–100

*Defendants.*

_____

FOR PLAINTIFFS-APPELLANTS: PAUL L. MILLS, Law Office of Paul L. Mills, New York, NY.

FOR DEFENDANTS-APPELLEES: ZACHARY S. SHAPIRO, Assistant Corporation Counsel (Richard Dearing, Devin Slack, Assistant Corporation Counsels, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Carter, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants appeal the district court's orders and judgment dismissing Plaintiffs' 42 U.S.C. § 1983 claims in favor of the City of New York (the "City"), former mayor Michael Bloomberg (the "Mayor"), former New York Police Department ("NYPD") Commissioner Raymond Kelly, former Chief of Department of the NYPD Joseph J. Esposito, and individual officers employed by the NYPD (collectively with the City, the Mayor, Kelly, and Esposito, "Defendants"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Between September 2011 and November 2011, a group of protestors known as "Occupy Wall Street" started a demonstration to protest what they saw as rising economic inequality and the improper influence of corporations on government. To amplify that message, hundreds of protestors, Plaintiffs among them, took up residence in Zuccotti Park (the "Park"), a privately-owned plaza in Manhattan's Financial District.

Over the course of many weeks, the protestors erected tents and other structures – which Defendants say violated the City's sanitation laws – and limited

3

the public's access to the Park.   In time, crime and hazardous conditions began to proliferate, including the use of gasoline and diesel generators near large quantities of flammable materials.

On November 15, 2011, NYPD officers ordered all persons present in the Park to leave with their personal belongings or face arrest.   While many protestors complied with the dispersal order, approximately 150 (including Plaintiffs) refused to leave and were subsequently arrested.   Plaintiffs thereafter sued, alleging violations of their First, Fourth, and Fourteenth Amendment rights. Ultimately, the district court entered judgment on the pleadings in favor of Defendants, finding that Plaintiffs had failed to allege a constitutional violation. This appeal followed.

"We review *de novo* a district court's decision on a motion to dismiss or for judgment on the pleadings, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor."   *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).   In so doing, we may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."   *L-7 Designs, Inc. v. Old*

4

*Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is [also] deemed to include . . . materials incorporated in it by reference[] and documents that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks omitted).

### *Discussion*

Though Plaintiffs set forth a number of different grounds for relief, the gravamen of their claims is that the NYPD's dispersal order, and the arrests that followed, were part of an unlawful scheme to muzzle the protestors and deprive them of their right to remain in the Park. Upon review, we conclude that the district court properly granted judgment on the pleadings in favor of Defendants because Plaintiffs have failed to plead any cognizable constitutional violations.

## I. False Arrest and Malicious Prosecution

"Probable cause is a complete defense to a constitutional claim of false arrest" and "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "Probable cause exists when 'the facts and circumstances within . . . the [police]

5

officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012)). To determine whether probable cause exists, we must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Marcavage*, 689 F.3d at 109 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

The record makes plain that the NYPD officers had probable cause to arrest Plaintiffs for, among other offenses, disorderly conduct under N.Y. Penal Law § 240.20(6) and trespass under N.Y. Penal Law § 140.05, after Plaintiffs refused to leave the Park following the dispersal order.

As an initial matter, we conclude that the dispersal order was lawful because it was intended to promote several legitimate governmental goals and was therefore not arbitrary. *See Kass*, 864 F.3d at 212; *see also Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206 (2d Cir. 2010). The City had a legitimate

6

interest in ensuring that the Park remained accessible to all members of the public – not just the protestors – and free of congestion. *See Kass*, 864 F.3d at 208; *Int'l Action Ctr. v. City of New York*, 587 F.3d 521, 527 (2d Cir. 2009); *see also Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 298 (1984) (acknowledging that "the Government [need not] tolerate" demonstrations that render parks "partial[ly] inaccessib[le] to other members of the public"). In addition, the City had a significant interest in clearing the Park of unlawful structures, *Betancourt v. Bloomberg*, 448 F.3d 547, 553–54 (2d Cir. 2006); *see also Gersbacher v. City of New York*, No. 14-cv-7600 (GHW), 2017 WL 4402538, at *7–8 (S.D.N.Y. Oct. 2, 2017) (acknowledging that N.Y.C. Admin. Code § 16-122(b), which prohibits the erection of "shed[s], building[s] or other obstruction[s]" in public spaces, applies to the Park), and mounting fire hazards, *Marcavage*, 689 F.3d at 105 ("The government interest in security is . . . significant.").

Plaintiffs' refusal to comply with that lawful dispersal order supplied probable cause to arrest them for disorderly conduct. Even in the early morning, it was entirely reasonable for the arresting officers to assume that nearly 150 protestors refusing to leave a public area in downtown Manhattan would risk

7

"public inconvenience." *Kass*, 864 F.3d at 211; *see also People v. Weaver*, 16 N.Y.3d 123, 128 (2011) ("We have made clear that a defendant may be guilty of disorderly conduct regardless of whether the action results in public inconvenience, annoyance or alarm if the conduct recklessly creates a risk of such public disruption."). In any event, the NYPD also had probable cause to arrest Plaintiffs for trespassing once they refused to leave the Park after being ordered to do so. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008); *Berger v. Schmitt*, 91 F. App'x 189, 190 (2d Cir. 2004) ("[U]nder New York law it is unlawful to remain on the premises after being personally given a lawful order to depart.").

## II.     Retaliatory Arrest and First Amendment Discrimination

"The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive." *Caravalho*, 732 F. App'x at 23 (citing *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012)). Though a narrow exception exists where there is "objective evidence" that the police refrained from arresting similarly situated people not engaged in speech, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019), no such facts were alleged here. As Plaintiffs admit, the NYPD arrested "everyone who remained in

8

the [P]ark" following the dispersal order.   Pls.' Br. at 35.

Plaintiffs fair no better in trying to classify the City's temporary closure of the Park as discriminatory.   In public fora, "the government may apply content-neutral time, place, and manner restrictions . . . [that] are 'narrowly tailored to serve a significant government interest'" so long as "'ample alternative channels of communication' are available."   *Kass*, 864 F.3d at 208 (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010)).   Assuming that the Park is such a public forum, the City's temporary closure satisfied these requirements.

First, the order was content neutral; just because protestors were the only ones impacted does not change that fact.   *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762–63 (1994).   Second, as described above, the dispersal order was motivated by significant City interests, including the need to address mounting fire hazards and reduce congestion.   Third, the dispersal order was appropriately tailored to achieve those interests and the City was not required to use the absolute "least restrictive or least intrusive means" possible.   *Caravalho*, 732 F. App'x at 23 (quoting *Marcavage*, 689 F.3d at 106).   Lastly, the dispersal order left open ample alternative channels for speech:   the protestors were free to exercise their rights

in any other public area within the vicinity of the Park (or even to return to the Park after it was cleaned).

## III.  Eviction from the Park Without Due Process

To assert a due process claim, a plaintiff must show that he has been "deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (quoting U.S. Const. amend. XIV § 1).  Such an interest must be "*individual* in nature."  *Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010).  "Thus, where the 'intended beneficiaries' of a particular law 'are entirely generalized,' . . . the law does not create a property interest protected by the Due Process Clause."  *Id.* at 34–35.

Here, Plaintiffs claim that they had a protected interest to remain in the Park because of an "easement" created by a City zoning resolution, Pls.' Reply at 11, and because the Mayor "publicly announced that so long as the camping demonstrators continued to obey the law they must and would be allowed to stay in the [P]ark," App'x 89.  Neither source created an individualized right to remain in the Park, let alone to do so while flouting City rules.

The City's zoning laws granting access to the Park "run[] to the public generally;" "[s]uch universal benefits are not property interests protected by the Due Process Clause." *Harrington*, 607 F.3d at 35 (internal quotation marks omitted). And setting aside whether the Mayor's general statement could even create an individualized entitlement, Plaintiffs ignore the Mayor's qualification that they could remain in the Park only so long as they obeyed the law. Since Plaintiffs refused to comply with a lawful dispersal order – necessitated in part by the protestors' own habitual violation of City rules – the Mayor's statement provides them with no basis for asserting a property interest in remaining permanently at the Park.

### *Conclusion*

We have reviewed the remainder of Plaintiffs' arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11