OPINION OF THE COURT
Judith A. Rossiter, J.
Defendant is charged by prosecutor’s information with one count of trespass in violation of Penal Law § 140.05, one count of disorderly conduct in violation of Penal Law § 240.20 (6), and one count of disorderly conduct in violation of Penal Law § 240.20 (7) for climbing a tree located at 660 Stewart Avenue on the Cornell University campus on November 13, 2003, and refusing to descend after being told to do so by Cornell officials and Cornell University police officers. The evidence shows that she was in the tree from before noon until shortly before 5:00 p.m. The day was windy and cold, with gusts up to 46 miles per hour and a wind chill of approximately 25 degrees Fahrenheit. Cornell University Officer Stanley Slovik explained that he ordered Ms. Millhollen to climb down because he was concerned that she might fall or that the tree would blow over. However, he testified that Ms. Millhollen was secured to the tree by a safety line and that she was seated on a platform affixed to the tree by ropes. Furthermore, he offered no evidence that the tree, identified as a hickory, was weak or damaged in any way. He stated merely that “trees are unpredictable.” At approximately 12:15 p.m. on November 13th, a Cornell officer contacted Jane Levy, the University events manager. Ms. Levy explained that it is her duty to read a statement adopted by the University to be used under such circumstances. The text of the statement read to the defendant by Ms. Levy is as follows:
“The actions you are engaged in violate the Regulations for the Maintenance of Public Order and the Law and the Regulations for the Maintenance of the Educational Environment. I am instructing you to leave within the next five minutes. If you fail to do so, you will be considered in violation and appropriate action may be taken to press charges against you.”
*812 The statement refers to campus regulations, which, at least in part, are published in the Campus Code of Conduct (tit One, art II [A]). The Policy Notebook for Cornell Community, 2003-2004, which sets forth the Code of Conduct, states in pertinent part as follows:
“Title One: Statement of Principles and Policies
“I. Fundamental Principles . . .
“C. The principle of freedom with responsibility is central to Cornell University. Freedom to teach and to learn, to express oneself and to be heard, and to assemble and lawfully protest peacefully are essential to academic freedom and the continuing function of the university as an educational institution.
“II. Supporting Principles and Policies of Judicial Administration . . .
“B. It is understood that the Board of Trustees, under § 5709 of the Education Law, is responsible for the protection of the grounds, buildings, and property of Cornell University, including state property under its supervision and control, and for the prevention of crime and the enforcement of law and order. State law also makes the trustees responsible for the enforcement of such rules and regulations as the board shall make from time to time. Under § 6450 of the Education Law, adopted in 1968, the Board of Trustees must also adopt rules for the maintenance of public order and provide sanctions for the violations of the Penal Law of the State of New York for the same misconduct. . .
“Title Five: Responsible Speech and Expression
“Purpose: The principle of freedom with responsibility is central to Cornell University. Freedom to teach and to learn, to express oneself and to be heard, and freedom to assemble and lawfully protest peacefully are essential to academic freedom and the continuing function of the university as an educational institution . . .
“II. Symbolic Expression
“A. Protected Expressive Conduct in General
“1. The university administration will treat as within the basic protection of a right to free expression such lawful conduct as satisfies the following tests. The conduct should (i) be intended for expres *813 sive purposes, (ii) be reasonably understood as such by the campus community, and (iii) comply with such reasonable time, place, and manner restrictions consistent with the other provisions of this title, as may be authorized from time to time by the president. . .
“C. Protest and Dissent Not Involving Structures
“1. Picketing, marches, rallies, and demonstrations are traditional and legitimate forms of self-expression on campus. The limiting principle for such activities is that demonstrators must not disrupt other university functions . . . The right to free expression here, as in other contexts, requires respect for the rights of others.
“Commentary — Because outdoor picketing, marches, rallies, and demonstrations generally pose no threat of long-lasting exclusive use of university grounds or property, there appears to be no need for a mandatory permit procedure for all such activities. . .
“D. Protests, Demonstrations, and Sit-Ins in and Around University Buildings
“1. . . .No such use shall be permitted beyond 5:00 PM. or the close of normal business hours . . .
“HI. Standing Committee on Free Expression
“The president is authorized and encouraged to appoint a standing committee to study and report to the president on significant policy issues concerning the protection of freedom of expression on campus.” (Policy Notebook for Cornell Community, 2003-2004.)
The Policy Notebook makes no specific mention of tree sitting. However, the commentary for section C of “Symbolic Expression” states that because outdoor picketing, marches, rallies and demonstrations generally pose no threat of long-lasting exclusive use of University grounds, there is no need for a mandatory permit system. Neither tree sitting nor tree climbing is specifically prohibited by the Policy Notebook. Tree sitting as a form of protest was popularized in 1999 when Julia “Butterfly” Hill ascended and then remained in a 1,000-year-old redwood tree near Stafford, California, for almost two years, to prevent logging of old growth trees (Rebecca Clarren, Julia Butterfly won’t come down, 31 High Country News No. 5, Mar. 15, 1999). Robert McClure, writing for the Seattle Post *814 Intelligencer, reported that by August 1999, tree-sitting protesters had become something of a fixture in the Pacific Northwest (Robert McClure, Tree-sitters Launch Towering Protest, Seattle Post-Intelligencer, Aug. 17, 1999, at Al). In November 2003, Ms. Millhollen introduced the technique to the Cornell campus.
In People v Leonard (62 NY2d 404 [1984]), the Court of Appeals overturned a conviction for trespass against a former State University of New York (SUNY) student who had been issued a persona non grata two years prior due to his behavior on campus. The Court said, “When the property is ‘open to the public’ at the time of the alleged trespass, . . . the accused is presumed to have a license and privilege to be present.” (Id. at 408.) In such case, the People have the burden of proving that (1) a lawful order excluding the defendant from the premises issued, (2) that the order was communicated to the defendant by a person with authority to make the order, and (3) that the defendant defied that order (id.). The Court recognized the administrators of SUNY Binghamton as having broad power and great flexibility in maintaining order and securing the safety of others on the school campus, but held that the state trespass laws “may not be enforced solely to exclude persons from exercising First Amendment or other protected conduct in a manner consistent with the use of the property” (id. at 410). The Court held,
“To satisfy its burden of proof with respect to the element of the crime that a ‘lawful order not to enter’ the property issued, the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct.” (Id. at 411.)
Based on the Cornell Policy Notebook, it is not clear whether tree sitting is a prohibited First Amendment activity if done before 5:00 p.m. Therefore, it is uncertain that a lawful order to cease tree sitting was issued. As the two prosecution witnesses testified, the defendant was well-equipped and wearing safety gear, and there was insufficient evidence that defendant’s tree sitting was any different from picketing outside on the ground in this case.
This tree-sitting case appears to be one of first impression in New York. The facts are distinguishable from those in Leonard *815 (supra) and those in People v Fox (Ithaca City Ct, Aug. 19, 1999, Docket No. 99-28937) because the defendant was an enrolled student in November 2003 and had license regardless of the classification of the property. Further, she had rights granted by the Policy Notebook, as quoted above. The court must determine whether she was within her First Amendment rights of free speech partially limited by the Policy Notebook (see Godinez v Siena Coll., 288 AD2d 659 [3d Dept 2001]). Peaceful picketing in a public place without drawing a crowd or obstructing business or traffic is protected (see People v Collins, 44 Misc 2d 430 [App Term, 2d Dept 1964]). However, a peaceful demonstration that interferes with ingress and egress to and from a quasi-public place, such as a supermarket, may be unprotected and constitute trespass (People v Bush, 82 Misc 2d 50 [App Term, 2d Dept 1975]). In People v Scutari (148 Misc 2d 440 [Nassau County Dist Ct 1990]), protestors of United States aid to the Salvadoran government failed to leave a congressional office after it closed for the day. In that case, the court drew a distinction between asking someone to leave because of their trespassing behavior and asking someone to leave because of their speech. The court found that the trespassers were asked to leave because of their trespass, not their speech, making the order to leave lawful. In this case, the “trespass” is an integral part of the defendant’s speech or message. The act, itself, is the “speech.” The tree is part of the message. In People v Alderson (144 Misc 2d 133 [Crim Ct, NY County 1989]), AIDS protestors entered and remained in the office of the Commissioner of the New York City Department of Health in a loud and disruptive protest. There, the court made a distinction between public space and the Commissioner’s private office within a public building. The court found the protest to be unprotected speech after the protestors were asked to leave. The court stated, “Civil disobedience has a well-recognized place in the history of our country and the world, but those who engage in such actions must understand that unless the law they violate is unconstitutional they will bear the consequence of their actions” (Alderson, supra at 147-148). In People v Hedemann (107 Misc 2d 241 [App Term, 1st Dept 1981]), a tax protestor in the taxpayer assistance area of the IRS office in Manhattan was asked to move activities to the lobby, but he refused. The court found this to be a legitimate regulation of free speech activity. The court said that the defendant did not have the right to use all parts of the building for unlimited expressive purposes. The court found the *816 critical question to be whether the manner of expression was compatible with the normal activity of a particular place at a particular time, citing Grayned v City of Rockford (408 US 104, 116 [1972]). The court in Hedemann (supra) cited areas historically associated with the exercise of First Amendment rights: streets, parks, and terminals. The fact that the lobby of the IRS office was also available as a nearby alternative forum for communication of the defendant’s views was also relevant. Clearly, the University reserves the right to exclude its students from secure or sensitive areas within its boundaries, but from a tree? In the absence of evidence showing that the defendant’s presence in that tree was incompatible with the University’s normal activities of teaching and research, the court grants the defendant’s motion to dismiss the charge of trespass at the close of the People’s case.
Penal Law § 240.20 (6) states, “[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.” The People have the burden to prove that the police issued a lawful order to disperse. The Court of Appeals in People v Munafo (50 NY2d 326, 331 [1980]) held that:
“Indeed, a requirement that the disruptive behavior proscribed by our disorderly conduct statute be of public rather than individual dimension was evolving even before subdivision 2 of section 722 of the former Penal Law was replaced by the present section 240.20. The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem. In deciding whether an act carries public ramifications, courts are constrained to assess the nature and number of those attracted, taking into account the surrounding circumstances, including, of course, the time and the place of the episode under scrutiny.” (Citations omitted.)
Mr. Munafo, in protest against the State Power Authority, stood himself in the path of a backhoe and refused to move when asked to do so by a police officer. The Court found that the dispute between the Authority and the defendant was private, not public, in nature. The defendant was accordingly found not guilty of disorderly conduct. Here, although others *817 were present, the only evidence presented was that those present, other than police officers and one or more University officials, were supporters of Ms. Millhollen. They can hardly be described as members of the public inconvenienced by her actions. At the same time, they were not with her in the tree, so she was not congregating with others in a tree. The only possible harm was to the defendant herself, but the evidence indicted that she was well-equipped and had used safety precautions to prevent injury. Without evidence of public inconvenience or the likelihood of same, there is insufficient basis for the order and no violation of subdivision (6). Count 2 is hereby dismissed.
As for subdivision (7) of the disorderly conduct statute, the prosecution must prove that the defendant created a hazardous or physically offensive condition by any act that serves no legitimate purpose. In People v Griswald, a defendant’s feeding and watering of stray cats in an unoccupied building and her refusal to allow the Code Enforcement Officer to enter the building was found not to indicate an intent to breach the public peace or create an imminent risk thereof (People v Griswald, 170 Misc 2d 38 [Yates County Ct 1996]). Family Court, in Seymour v Seymour (56 Misc 2d 546 [Fam Ct, Tioga County 1968]), interpreted subdivision (7), relating to the creation of hazardous or physically offensive conditions, as creating situations such as throwing fireworks into a crowd or noxious materials into a confined space, such as a theater. Here, the hazard, if any, was only to the defendant herself. Furthermore, University policy supports the notion that peaceful protest is essential to academic freedom and the function of the University as an educational institution. Accordingly, defendant’s actions in protesting the felling of trees to create a parking lot cannot be classified as an action without legitimate purpose. Here, the motion to dismiss count 3 is hereby granted.
In view of the foregoing, the motion to dismiss at close of the People’s case is granted, and the case is hereby dismissed.