**15-2053-cv**
*Kass v. City of New York, et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

_____

AUGUST TERM, 2016

ARGUED: AUGUST 23, 2016
DECIDED: JULY 24, 2017

No. 15-2053-cv

STEPHEN L. KASS,
*Plaintiff-Appellee,*

*v.*

CITY OF NEW YORK, MICHAEL ALFIERI, NYPD OFFICER; SHIELD #800,
K. ERNST, NEW YORK CITY POLICE ("NYPD") OFFICER,
*Defendants-Appellants,*

NYPD OFFICER JANE BEGGIN, NYPD OFFICER JOHN DOE, NYPD
OFFICER MEREDITH BIGGIN,
*Defendants.*[*]

_____

Appeal from the United States District Court
for the Southern District of New York.
No. 14 Civ. 7505 – Andrew L. Carter, Jr., *Judge.*

_____

Before: WALKER, CHIN, AND LOHIER, *Circuit Judges.*

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

————

Defendants-appellants the City of New York ("the City") and certain New York City Police Department ("NYPD") officers bring this interlocutory appeal from an order of the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *J.*) denying their motion for judgment on the pleadings. We consider in this appeal (1) whether the NYPD officers are entitled to qualified immunity from plaintiff-appellee Stephen L. Kass's federal false arrest and imprisonment claim under 42 U.S.C. § 1983 and (2) whether we should exercise pendent jurisdiction over Kass's state law claims against these officers and the City.

We hold that, because the officers had arguable probable cause to arrest Kass for obstructing governmental administration, N.Y. Penal Law § 195.05, and refusing to comply with a lawful order to disperse, N.Y. Penal Law § 240.20(6), they are entitled to qualified immunity. We therefore REVERSE the district court's denial of the defendants-appellants' motion with respect to Kass's federal and state false arrest and imprisonment claims. We DISMISS the remainder of the appeal for lack of appellate jurisdiction.

————

MELANIE T. WEST (Deborah A. Brenner, *on the brief*), on behalf of Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellants*.

ANDREW G. CELLI, JR. (Alison Frick, *on the brief*) Emery Celli Brinckerhoff & Abady LLP, New York, NY *for Plaintiff-Appellee.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Defendants-appellants the City of New York ("the City") and certain New York City Police Department ("NYPD") officers bring this interlocutory appeal from an order of the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *J.*) denying their motion for judgment on the pleadings. We consider in this appeal (1) whether the NYPD officers are entitled to qualified immunity from plaintiff-appellee Stephen L. Kass's federal false arrest and imprisonment claim under 42 U.S.C. § 1983 and (2) whether we should exercise pendent jurisdiction over Kass's state law claims against these officers and the City.

We hold that, because the officers had arguable probable cause to arrest Kass for obstructing governmental administration, N.Y. Penal Law § 195.05, and refusing to comply with a lawful order to disperse, N.Y. Penal Law § 240.20(6), they are entitled to qualified immunity. We therefore REVERSE the district court's denial of the defendants-appellants' motion with respect to Kass's federal and state false arrest and imprisonment claims. We DISMISS the remainder of the appeal for lack of appellate jurisdiction.

**BACKGROUND**

On September 17, 2013, protestors gathered in Zuccotti Park in New York City to commemorate the second anniversary of the Occupy Wall Street movement. The NYPD placed barricades around the perimeter of the park to cordon off the area where the protestors were gathered and to separate the protestors, who were inside the park, from the pedestrians who were on the adjacent sidewalk along lower Broadway. NYPD Sergeant Michael Alfieri, Officer Karen Ernst, and Officer Meredith Biggin were stationed on the sidewalk near the barricades.

At around 4:40 p.m., Stephen L. Kass, then a 73-year-old attorney, was walking north on Broadway when he noticed the crowd of people in Zuccotti Park. Kass approached the barricades and, while standing on the sidewalk, engaged in a non-confrontational conversation with several protestors. Kass did not impede pedestrian or vehicular traffic during this conversation. After Kass had spoken with the protestors for a minute or two, Ernst approached Kass and instructed him to "keep walking." Joint App'x at 16. Kass replied that he wanted to hear the protestors' views, he was not blocking pedestrian traffic, and he had a right to remain on the sidewalk. Ernst repeated that Kass had to move away from the barricade. When Kass continued to refuse to comply, Ernst called over Alfieri.

At this point, one of the protestors began recording a video of the interaction, the authenticity and accuracy of which is not in dispute. As can be seen on the video, Ernst and Alfieri instructed Kass several times to continue walking. Kass repeated that he wanted to talk to the protestors, that he was not blocking pedestrian traffic, and that he would not move. Alfieri then directed Kass to follow him and placed his hand on Kass's elbow, attempting to guide him away from the barricades. Kass pulled away, telling Alfieri to take his hands off of him and that he was talking to the protestors. Ernst then suggested that Kass could go inside the park to continue his conversation with the protestors.

After Kass continued to refuse to comply, Alfieri grabbed Kass's right arm and pulled him toward the middle of the sidewalk, away from the barricade and protestors. Kass immediately objected, saying "get your hands off of me, how dare you, get your hands off me." A third unidentified officer then grabbed Kass's other arm, and the officers handcuffed Kass. Kass was brought to the precinct and issued a summons for disorderly conduct under New York Penal Law § 240.20(5). This charge was ultimately dismissed for failure to prosecute.

On September 16, 2014, Kass filed the instant action against the City and NYPD officers Ernst and Alfieri. Kass also named as a defendant an NYPD officer who was later identified as Meredith

Biggin and who was served with the complaint on May 13, 2015. Kass alleged that the officers did not have probable cause to arrest him and that the City was liable for the actions of its employees under the doctrine of *respondeat superior.* Kass asserted federal claims against the officers for false arrest and imprisonment as well as malicious prosecution, and New York state law claims against all of the defendants for false arrest and imprisonment, malicious prosecution, and assault and battery.

On March 16, 2015, before Biggin was served with the complaint, the City, Ernst, and Alfieri moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Ernst and Alfieri argued that they were entitled to qualified immunity because there was probable cause or, at least, arguable probable cause to support Kass's arrest. The City, Ernst, and Alfieri also sought dismissal of the state law claims against them. While this motion was pending, Kass withdrew his federal malicious prosecution claim.

On June 8, 2015, the district court dismissed Kass's withdrawn claim, but otherwise denied the defendants-appellants' motion. The district court did not explain its basis for rejecting the officers' qualified immunity defense. On June 24, 2015, the City, Ernst, Alfieri, and Biggin timely filed an interlocutory appeal.

**DISCUSSION**

As an initial matter, we address whether defendant Biggin is properly included as an appellant in this action. Kass argues that because Biggin was not a party to the Rule 12(c) motion, she should not be permitted to appeal the district court's denial of that motion. Although Kass only cursorily raises this issue and the defendants do not present any arguments in response, we must address whether Biggin has standing to pursue this appeal before we turn to the merits of her arguments. *See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC,* 467 F.3d 73, 77 (2d Cir. 2006) (noting "[s]tanding to appeal is an essential component of our appellate jurisdiction"); *see also Tachiona v. United States*, 386 F.3d 205, 210-11 (2d Cir. 2004).

In order to have standing on appeal, "a party must be aggrieved by the judicial action from which it appeals." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 92 (2d Cir. 2014) (citation omitted). A party that is "not bound by a [district court order] will, in the usual case, have difficulty showing that it meets the Article III standing requirement" that it has suffered such an injury. *Tachiona*, 386 F.3d at 211; *see, e.g., Arizonans for Official English v. Arizona,* 520 U.S. 43, 66 (1997) (noting "grave doubts" as to whether parties who "were not bound by the judgment" of the district court had Article III standing to appeal).

Here, defendant Biggin was not a party to the relevant Rule 12(c) motion , she is not bound by the district court's order denying that motion, and the defendants have failed to argue on appeal that she has sustained any legal injury as a result of this order. We therefore agree with Kass that she is not properly an appellant before this Court. Thus, our decision concerns only Kass's claims against the City, Ernst, and Alfieri, the defendants-appellants.

### I.     Federal False Arrest and Imprisonment Claim

On appeal, the defendants-appellants argue first that Kass's federal false arrest and imprisonment claim should be dismissed against Officers Ernst and Alfieri because the district court incorrectly rejected their qualified immunity defense. Although generally an appeal must await a final dispositive judgment in the district court, we have jurisdiction over an interlocutory appeal from a denial of qualified immunity when, as is the case here, the matter can be decided as a matter of law. *See DiStiso v. Cook,* 691 F.3d 226, 239 (2d Cir. 2012). That is because an individual who is entitled to qualified immunity is immune not only from liability, but also from further legal proceedings, and should receive such immunity at "the earliest possible stage of the litigation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.4 (2014) (citation and brackets omitted).

We review *de novo* a district court's denial of a motion for judgment on the pleadings based on qualified immunity. *See*

*Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003); *Garcia v. Does*, 779 F.3d 84, 91 (2d Cir. 2015). We apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Anderson*, 317 F.3d at 197. However, when the record includes a video that the parties concede is authentic and accurate**,** as is the case here, we view the allegations of the complaint as true only "to the extent that they are not contradicted by video evidence." *See Garcia*, 779 F.3d at 88.

The burden is on the defendants to demonstrate that qualified immunity applies and that their motion for judgment on the pleadings should be granted. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The defendants therefore must show that, construing all reasonable inferences in the plaintiff's favor, "the facts supporting the [immunity] defense appear on the face of the complaint" and that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (citation omitted).

An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged. *Betts v. Shearman*, 751 F.3d 78, 82-83 (2d Cir. 2014); *Myers v. Patterson*, 819 F.3d 625, 632-33

(2d Cir. 2016); *Zalaski v. City of Hartford,* 723 F.3d 382, 390 n.4 (2d Cir. 2013). Probable cause exists when "the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Marcavage v. City of N.Y.,* 689 F.3d 98, 109 (2d Cir. 2012) (citation omitted). Arguable probable cause exists when "it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met." *Myers*, 819 F.3d at 633 (citation omitted). In other words, an officer is entitled to qualified immunity unless "no officer of reasonable competence could have made the same choice in similar circumstances." *Id*. (citation omitted). The qualified immunity defense, thus, is a broad shield that protects "all but the plainly incompetent or those who knowingly violate the law." *Zalaski*, 723 F.3d at 389 (citation omitted).

Here, the officers assert that they are entitled to qualified immunity because they had probable cause or, at least, arguable probable cause to arrest Kass for two separate offenses: obstructing governmental administration, N.Y. Penal Law § 195.05, and refusing to comply with a lawful order to disperse, N.Y. Penal Law § 240.20(6). We agree that the officers are shielded by qualified

immunity, and we reverse the district court's denial of the officers'
motion for judgment on the pleadings with respect to Kass's federal
false arrest and imprisonment claim.

i.      Obstruction of Governmental Administration

We first address whether the officers had arguable probable
cause to arrest Kass for obstructing governmental administration.
New York Penal Law § 195.05 provides that,

> A person is guilty of obstructing governmental
> administration when he intentionally obstructs, impairs
> or perverts the administration of law or other
> governmental function or prevents or attempts to
> prevent a public servant from performing an official
> function, by means of intimidation, physical force or
> interference, or by means of any independently
> unlawful act.

An individual, therefore, may be convicted under this statute
when (1) a public servant is performing an official function; (2) the
individual prevents or attempts to prevent the performance of that
function by interfering with it; and (3) the individual does so
intentionally. *See* N.Y. Penal Law § 195.05. For the following
reasons, we think that it was at least debatable and reasonable
officers could disagree as to whether all three of these elements were
met in the instant case.

a. *Official Function*

The first element is that the public servant must be performing an official function that is "authorized by law." *In re Verna C.*, 531 N.Y.S.2d 344, 345 (2d Dep't 1988). The defendants argue that, in ordering Kass to move, the officers were lawfully regulating pedestrian traffic and addressing any congestion or security issues relating to the protest. Kass responds that it was not objectively reasonable for the officers to believe that he had committed a crime and thus that they had the authority to arrest him for standing on a public sidewalk and refusing to move.

Kass's argument misses the point. An officer does not need to believe that an individual has committed a crime before he or she may lawfully direct the individual to move from where he is standing. *See, e.g.*, *Marcavage*, 689 F.3d at 110 (concluding that officers lawfully directed protestors to move because protestors were standing in a designated no-demonstration zone). And, contrary to Kass's assertion, the officers did not direct Kass to move simply because he was standing on a sidewalk or, as we will discuss below, arrest him because he refused to obey an arbitrary order to move. Kass's argument ignores the context in which the officers' orders occurred: on a sidewalk in the heart of downtown Manhattan, shortly before 5 p.m., and near a public protest that the officers were attempting to maintain within a confined area to

ensure crowd control and security. We think that, under such circumstances, it was objectively reasonable for the officers to believe that they had the authority to order Kass, who was engaging with protestors while standing on a sidewalk adjacent to the protest, either to "keep walking" or enter the park to continue speaking with the protestors.

Kass also argues that these orders were unconstitutional under the First Amendment because they "arbitrarily and forcibly remove[d] a passer-by from a public sidewalk" and prevented him from hearing the protestors' message. Appellee Br. at 17. The First Amendment, which applies to the states through the Fourteenth Amendment, guarantees freedom of speech. U.S. CONST. amend. I; *see Thornhill v. Alabama*, 310 U.S. 88, 95 (1940). This guarantee extends not only to the right to speak, but also to the right to listen and receive information. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both."(footnote omitted)); *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002) ("[T]he right to hear and the right to speak are flip sides of the same coin.").

The First Amendment, however, "does not guarantee the right to communicate . . . at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,

452 U.S. 640, 647 (1981).  The extent to which the government may permissibly restrict such communications depends in part upon the circumstances under which those communications and the receipt of those communications occur.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (per curiam).  Traditional public fora, such as sidewalks and parks, are afforded the broadest protections for free expression.  *Id.*; *see also McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014) ("[N]ormal conversation . . . on a public sidewalk . . . [is a form of expression that has] historically been more closely associated with the transmission of ideas than others.").  In such public fora, the government may apply content-neutral time, place, and manner restrictions only if they are "narrowly tailored to serve a significant government interest" and if "ample alternative channels of communication" are available.  *Zalaski*, 613 F.3d at 341 (citation omitted).[1]

At issue here is the balance between an individual's First Amendment right to engage in a conversation on a public sidewalk with protestors and the government's interest in maintaining public safety and order.  Although sidewalks are generally open to the public, including for "expressive activities," we have recognized that the government "certainly has a significant interest in keeping its

[1] There is no claim here that the officers were responding based on the content of the protestors' or Kass's speech.

public spaces safe and free of congestion." *Marcavage,* 689 F.3d at 104 (citations omitted); *see also Mastrovincenzo v. City of New York,* 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitute[s] [a] 'significant governmental interest[]'."). Here, as we have noted, Kass was standing on a sidewalk in downtown Manhattan that was adjacent to the protest and that was being used by pedestrians. We agree with the officers that the government had a significant interest in ensuring that the protest remained within the park and that pedestrian traffic on this sidewalk was not impeded.

The officers' orders also were narrowly tailored to achieve this significant government interest. *See Zalaski,* 613 F.3d at 341. A restriction on free speech is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen,* 134 S. Ct. at 2535 (citation omitted); *see also Frisby v. Schultz,* 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." (citation omitted)). The restriction, however, need not be "the least restrictive or least intrusive means of [achieving those interests]." *Mastrovincenzo,* 435 F.3d at 98 (citation omitted). In *Marcavage v. City of New York,* for example, we held that police officers, who were regulating pedestrian traffic during the 2004 Republican National

Convention and who instructed protestors to leave an area that had been designated as a no-demonstration zone, were performing a lawful governmental function that did not violate the protestors' First Amendment rights. 689 F.3d at 109. We determined that, because there were crowds of protestors and pedestrians associated with the convention and the non-protest areas were limited to a two-block stretch during the convention, these restrictions were sufficiently tailored to achieve the government's significant interest in keeping such public spaces safe and free of congestion. *Id.* at 106-07.

Here, the officers ordered Kass, after he had conversed with the protestors for a minute or two while standing outside of the designated protest area, to either keep walking or enter the park to continue his conversation. The officers' orders targeted and sought to eliminate the risk that the protest might expand beyond the barricades and that individuals who were not within the park, such as Kass, might cause congestion or a security issue by interacting with protestors on the sidewalk outside of the protest area. We acknowledge that, when the officers ordered Kass to move, he was the only individual speaking with the two protestors and he was not then impeding pedestrian or vehicular traffic. Whether the officers' orders were justified under these circumstances, however, "should not be measured by the disorder that would result from granting an

exemption solely to [one individual] because if [he] were allowed a dispensation, so too must other groups, which would then create a much larger threat to the [City's] interest in crowd control and security." *See id.* at 107 (citation omitted). Further, we do not think that to avoid liability the officers needed to refrain from intervening until Kass actually impeded pedestrian traffic or caused a security issue. *See id.* (rejecting plaintiffs' argument that, because they were two protestors who were "standing out of the way," the congestion and security risks justifying a no-demonstration zone did not apply to them). We also note that once Alfieri tried to move Kass away from the barricades, Kass became agitated and hostile, thereby further increasing the risk that he would impede traffic or pose a security threat. Under such circumstances, the officers' repeated orders that Kass either "keep walking" or enter the protest area to continue his conversation were narrowly tailored to maintain crowd control and security.

Finally, the officers' orders did not foreclose ample, alternative channels of communication. Such channels need not "be perfect substitutes for those . . . denied to [the plaintiff] by the regulation at hand." *Mastrovincenzo,* 435 F.3d at 101; *see also Connection Distrib. Co. v. Reno,* 154 F.3d 281, 293 (6th Cir. 1998) ("[T]he requirement that ample alternative channels be left available does not mean that there must be a channel where [plaintiffs] can

express themselves in precisely the same manner."). Here, the officers suggested a reasonable alternative: Kass could continue his conversation with the protestors if he simply entered the park. Kass does not advance any argument on appeal as to why this would not have been an adequate, alternative forum for his conversation.

Thus, because the officers' orders were content neutral, narrowly tailored, and allowed an adequate, alternative channel of communication, they were a permissible time, place, and manner restriction on speech and did not violate the First Amendment.

b. *Interference with the Official Function*

The second element is that an individual must prevent or attempt to prevent a public official from performing a lawful official function by interfering with that function. *See* N.Y. Penal Law § 195.05. Although the interference must at least in part be "physical" and cannot consist solely of verbal statements, *People v. Case*, 42 N.Y.2d 98, 101-02 (1977), an officer may consider both words and deeds in determining whether the individual's conduct is sufficiently obstructive to justify an arrest, *In re Davan L.*, 91 N.Y.2d 88, 91-92 (1997). Such interference can consist of "inappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved." *People v. Romeo*, 779 N.Y.S.2d 860, 861-62 (3d Dep't 2004) (internal citations omitted). This element of the statute is satisfied when an individual

"intrude[s] himself into, or get[s] in the way of, an ongoing police activity." *In re Kendell R.*, 897 N.Y.S.2d 83, 84 (1st Dep't 2010); *see also Davan L.*, 91 N.Y.2d at 91 ("[C]riminal responsibility should attach to minimal interference set in motion to frustrate police activity.").

Here, Kass physically interfered with the officers' efforts to confine the protest to the park and keep the sidewalk clear for pedestrians. Kass refused to obey the officers' repeated orders to move along and, after Alfieri placed his hand on Kass's elbow to guide Kass away from the barricades, Kass instructed Alfieri to "get [his] hands off" of him and pulled away. A reasonable officer could conclude under these circumstances that Kass had physically "[gotten] in the way of" and had frustrated the officers' efforts to contain the protest and prevent sidewalk congestion. *See Kendell R.*, 897 NY.S.2d at 84; *see also Marcavage*, 689 F.3d at 110 (probable cause to arrest protestors for refusing to leave the no-demonstration zone despite officers' repeated requests); *Romeo*, 779 N.Y.S.2d at 861 (probable cause to arrest individual who was "belligerent, uncooperative and refused several direct requests that he keep away from the officers as they attempted to subdue his girlfriend").

c. *Intent to Prevent Performance of Official Function*

Finally, the third element is that an individual who interferes with an official function must intend to prevent the officers from performing that function. *See* N.Y. Penal Law § 195.05. However,

because "the practical restraints on police in the field are greater with respect to ascertaining intent . . ., the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great." *Zalaski*, 723 F.3d at 393 (citation omitted); *see also Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (whether inference of innocent intent "was also reasonable . . . does not matter so long as the [officer's] conclusion [that there was culpable intent] was itself reasonable").

Here, as we have described, the officers were stationed on the public sidewalk and in close proximity to the protest in order to maintain crowd control and security. The officers informed Kass that he needed to move in order to keep the sidewalk clear for pedestrian traffic. Kass, however, verbally and physically refused to obey the officers' orders either to "keep walking" or join the protestors inside of the park. We think that it was reasonable for the officers to infer that, based on Kass's repeated refusals to move, he intended to interfere with their efforts to confine the protest in the designated area and prevent sidewalk congestion. *See Marcavage*, 689 F.3d at 110 (probable cause to arrest protestors who were "hostile and noncompliant" when officers ordered them to move); *Davan L.*, 91 N.Y.2d at 91-92 (probable cause to arrest individual who rode bicycle into "confined and defined" police activity area, despite being "put on specific direct notice" not to do so).

In sum, because reasonable officers could at least debate whether there was probable cause to arrest Kass for obstructing governmental administration in violation of New York Penal Law § 195.05, we hold that the officers are entitled to qualified immunity for Kass's federal false arrest and imprisonment claim.

ii.     Refusal to Comply with a Lawful Order to Disperse

Although we must reverse the district court's ruling if the officers had arguable probable cause to arrest Kass for any offense, we think the officers also had arguable probable cause to arrest Kass for disorderly conduct.   Pursuant to New York Penal Law § 240.20(6), "a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."   This offense consists of the following elements: the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm.  *Id.*

a.  *Congregating with Others in a Public Place*

First, it was objectively reasonable for the officers to determine that Kass was "congregat[ing] with other persons in a public place."

*See* N.Y. Penal Law § 240.20(6). New York courts have defined this term as a gathering of "at the very least three persons . . . at a given time and place," including the individual who was arrested. *People v. Carcel,* 3 N.Y.2d 327, 333 (1957); *see also United States v. Nelson*, 500 F. App'x 90, 92 (2d Cir. 2012) (summary order). Kass argues on appeal that he approached only one protestor. He alleged in his complaint, however, that he was "arrested while speaking with *protestors*" and that he "engaged in a brief discussion with a protestor who was holding [a] sign and with another protestor standing nearby." Joint App'x at 13, 16 (emphasis added). Based on Kass's own allegations, therefore, he was speaking with at least two protestors.

Kass also argues that he did not "congregate" with these protestors because he refused to cross the barricades to join the protest. In support of this argument, he cites two cases in which New York state courts determined that the individual at issue was not physically close enough to other demonstrators to satisfy this element of the statute. In *People v. Millhollen*, the court found that a woman who was protesting while perched in a tree was not "congregating with others" because, although she had supporters who were standing on the ground, there was no one else in the tree who was protesting with her. 786 N.Y.S. 2d 703, 708 (Ithaca City Ct. 2004). Similarly, in *People v. Carcel*, the court determined that two

individuals—one who was walking outside of the United Nations' headquarters and the other who was standing "quite some distance apart" handing out leaflets—were not congregating with one another because they were "not even standing together" and were "only two in number." 3 N.Y.2d at 331, 333.

In the instant case, it was objectively reasonable for the officers to conclude that Kass had gathered with the two protestors, even though there was a barricade between them. Kass does not dispute that he was standing in close proximity to the protestors while he was conversing with them. Further, although this conversation lasted only for a short period before the officers ordered that Kass move along, the officers did not have any basis to believe that Kass was pausing only momentarily on the sidewalk. Indeed, when they instructed Kass to leave, he refused to do so and stated that he wanted to continue talking with the protestors.

b. *Lawful Order to Disperse*

Second, the officers lawfully ordered Kass to disperse. As an initial matter, Kass disputes that the officers directed him to leave the area where he was standing and argues that they made a "series of confusing and contradictory statements." Appellee Br. at 34. The video clearly contradicts this assertion. The officers ordered Kass to "keep walking" and to "move on" several times. Joint App'x at 16-17, 120. Although Ernst suggested that Kass could join the

protestors in the park, the unavoidable implication was that he could no longer stand on the sidewalk near the barricades while speaking with the protestors. Moreover, Kass responded that he would not move from where he was standing, thereby indicating that he heard and understood the officers' orders.

Further, New York courts have held that "a refusal to obey such an order [to move] can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *People v. Todaro*, 26 N.Y.2d 325, 328–29 (1970) (quoting *People v. Galpern*, 259 N.Y. 279, 284-85 (1932)); *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206 (2d Cir. 2010) (summary order) (same). As we have described earlier, the officers lawfully ordered Kass to move in furtherance of a legitimate public purpose—to maintain crowd control and security—and thus their orders were not "purely arbitrary." *See Todaro*, 26 N.Y.2d at 328-29.

   c. *Refusal to Obey the Order to Disperse*

Third, Kass explicitly refused to obey the officers' orders. In response to Ernst's repeated requests that he "keep walking," he stated that he "was not part of the protest," that "he was a citizen who wanted to hear what the protestor was saying," and that "he had a right to do so." Joint App'x at 16-17. Alfieri then approached Kass and instructed him to leave the area, to which Kass responded

that he would not move because he was "talking to these people." Alfieri took hold of Kass's elbow to guide Kass away from the barricades, and Kass instructed Alfieri to "get [his] hands off" of him and pulled away from Alfieri.

Based on this conduct, a reasonable officer could infer that Kass was refusing to obey the officers' orders to disperse. *See Shamir v. City of N.Y.*, 804 F.3d 553, 557 (2d Cir. 2015) (noting where plaintiff initially obeyed officer's order to move and then went back to the officer and called him a thug, plaintiff's "approach to the officer [after he was told to move] is the antithesis of complying with an order to disperse"); *see also Rivera v. City of N.Y.*, 836 N.Y.S.2d 108, 112 (1st Dep't 2007) (failure of protestors to disperse after lawful order to do so, even when protestors asserted right to remain, supported probable cause for arrest).

d. *Recklessly Creating Risk of Causing Public Inconvenience, Annoyance or Alarm*

Finally, fourth, reasonable officers could disagree about whether Kass's continued refusal to leave the area where he was standing "recklessly creat[ed] a risk" of "caus[ing] public inconvenience, annoyance or alarm." *See* N.Y. Penal Law § 240.20(6). Although "the risk of public disorder does not have to be realized[,] the circumstances must be such that defendant's intent to create such a threat (or reckless disregard thereof) can be readily

inferred." *People v. Baker*, 20 N.Y.3d 354, 360 (2013) (citation omitted). In determining whether this element is satisfied, New York courts consider "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." *Id.* (citation omitted).

Here, as we have noted, Kass was standing on a sidewalk in the heart of downtown Manhattan shortly before 5 p.m. and in close proximity to a public protest. It is not clear based on the video whether protestors or pedestrians were drawn to Kass's interaction with the police. After Kass initially refused the officers' orders to "keep walking," however, at least one unidentified individual interjected by responding to the officers that Kass was not blocking the sidewalk. Further, as can be seen on the video, once Alfieri placed his hand on Kass to guide him away from the barricades, Kass became increasingly agitated. A third officer eventually needed to intervene in order to help Alfieri physically move Kass, who was resisting Alfieri's attempts to pull him away from the barricades.

Given the context in which Kass repeatedly refused to comply with the officers' orders—on a public sidewalk where pedestrians were passing, at a time of day when the sidewalks might shortly

become more congested, and in close proximity to a public protest—and because Kass became increasingly hostile and resistant toward the officers, it was objectively reasonable for the officers to infer that Kass's continued defiance of their orders recklessly created a risk that he would "cause public inconvenience, annoyance or alarm," including a public disturbance. *See* N.Y. Penal Law § 240.20(6). At the very least, competent police officers could reasonably disagree as to whether, by remaining on the sidewalk despite numerous requests to move on, Kass recklessly created such a risk.

In sum, we conclude that Ernst and Alfieri had arguable probable cause to arrest Kass for violating both New York Penal Law § 195.05 and § 240.20(6) and are entitled to qualified immunity for Kass's federal false arrest and imprisonment claim. Any other conclusion, in our view, would not appropriately confine the denial of qualified immunity to officers who are "plainly incompetent" or "knowingly violate the law." *See Zalaski*, 723 F.3d at 389.

**II.     State Law Claims**

The defendants also request that this Court dismiss Kass's state law claims against the officers and the City. In exercising jurisdiction over an immediate appeal from the denial of qualified immunity, we may consider issues that are "inextricably intertwined" with the qualified immunity question, such that "no additional inquiry or analysis is necessary" once the question of

qualified immunity has been resolved. *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 105 (2d Cir. 2006) (citations omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).

Because the officers are immune from suit with respect to Kass's federal false arrest claim, we dismiss Kass's state law false arrest claim against the officers. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 86-87 (2d Cir. 2007) ("If the . . . defendants [are] entitled to qualified immunity under federal law, . . . judgment [is] similarly appropriate on [plaintiff's] state law false arrest claim."). We also dismiss Kass's state law false arrest claim against the City, which is based solely on his allegation that the City is responsible for any false arrest that was committed by the officers. *See Demoret v. Zegarelli*, 451 F.3d 140, 152-53 (2d Cir. 2006). Kass's remaining state law claims for malicious prosecution and assault and battery, however, require additional analysis and we therefore lack appellate jurisdiction over those claims. *See Skehan*, 465 F.3d at 105; *Toussie v. Powell*, 323 F.3d 178, 184-85 (2d Cir. 2003).

**CONCLUSION**

For the foregoing reasons, we **REVERSE** the district court's denial of the defendants-appellants' motion for judgment on the pleadings with respect to Kass's federal and state false arrest and imprisonment claims and **DISMISS** the remainder of the appeal.