17-1944-cv
*Caravalho, et al. v. City of N.Y., et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of April, two thousand eighteen.

PRESENT:    RICHARD C. WESLEY,
            DENNY CHIN,
                    *Circuit Judges*,
            JESSE M. FURMAN,
                    *Judge.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALEXANDER CARAVALHO, SERGIO CASTILLO,
DANIEL GREENSPAN, JOSEPH SHARKEY,
EASTON SMITH, JENNIFER WALLER,
                    *Plaintiffs-Appellants*,

ERIC CARTER, AUSTIN GUEST, THOMAS HINTZE,
                    *Plaintiffs*,

                    v.                                    17-1944-cv

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, OFFICER LI, AHMED, NYPD

---

[*]    Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

OFFICER ABDEL-RAHIM, RODRIGUEZ, NYPD
OFFICERS JOHN DOES, 1-15, the names being
fictitious, as the true names and shield numbers are
not presently known, in their individual and official
capacities, NYPD OFFICERS JANE DOES, 1-15, the
names being fictitious, as the true names and shield
numbers are not presently known, in their individual
and official capacities, NYPD DEPARTMENT CHIEF
JOSEPH ESPOSITO, NICOLE PAPAMICHAEL,
DEPARTMENT INSPECTOR EDWARD WINSKI,
LIEUTENANT FRANK VIVIANO, OFFICER
GRANTLEY BOVELL, SHIELD NO. 11743, OFFICER
JABDED AHMED, SHIELD NO. 19415, OFFICER
ALEXIS RODRIGUEZ, SHIELD NO. 28722, OFFICER
CHEUNG LI, SHIELD NO. 5474, OFFICER
MICHAEL GALGANO, SHIELD NO. 2671,

                    *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR PLAINTIFFS-APPELLANTS:     GIDEON O. OLIVER, New York, New York.

FOR DEFENDANTS-APPELLEES:      JOHN MOORE, Assistant Corporation Counsel
                               (Richard Dearing, Deborah A. Brenner,
                               Assistant Corporation Counsels, *on the brief*),
                               *for* Zachary W. Carter, Corporation Counsel of
                               the City of New York, New York, New York.

Appeal from the United States District Court for the Southern District of

New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED.**

Plaintiffs-appellants, six individuals who were arrested on March 17, 2012

after refusing to disperse from an Occupy Wall Street protest in Zuccotti Park, appeal

the district court's orders dismissing their 42 U.S.C. § 1983 claims in favor of defendants-appellees, employees of the New York City Police Department (the "NYPD") and the City of New York (the "City"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The following facts are construed in the light most favorable to plaintiffs. Alexander Carvalho, Sergio Castillo, Daniel Greenspan, Joseph Sharkey, Easton Smith, and Jennifer Waller were among hundreds of protesters celebrating the six-month anniversary of the Occupy Wall Street movement in Zuccotti Park on March 17, 2012. Zuccotti Park is a privately owned public space which is governed by park rules established and enforced by its owner and operator, Brookfield Office Properties ("Brookfield"). On that day, two NYPD officials -- Chief of Department Esposito and Deputy Inspector Winski -- observed protesters setting up tents and tarps, lying down, and climbing on fences and shrubs. This behavior violated posted park rules, and a Brookfield representative announced that the park was being closed for cleaning and that people were required to leave in order that the park be cleaned. Plaintiffs ignored the instructions.

After the decision was made to clear the park, Winski and Lieutenant Viviano made several announcements with bullhorns ordering protesters to disperse, but not all plaintiffs heard the announcements. Plaintiffs did not leave and, except for Castillo, locked arms and legs with other protesters to form human walls. After further

warnings, the police arrested those protestors who refused to leave, including plaintiffs, and transported them on buses to police precincts and later Central Booking. Because plaintiffs and other arrestees were separated from their arresting officers during transport, other officers were designated as arresting officers and completed the arrest processing paperwork. Plaintiffs were held in custody for 24 to 30 hours. They were released without charges because their designated arresting officers could not personally attest to their criminal conduct.

On June 17, 2013, plaintiffs sued the City and certain NYPD officers for violations of their First, Fourth, Sixth, and Fourteenth Amendment rights. The district court granted summary judgment in part for defendants pursuant to a March 31, 2016 memorandum and order, dismissing all plaintiffs' claims at issue in this appeal. The court denied plaintiffs' motion for reconsideration on July 29, 2016, and -- following the settlement of remaining issues unrelated to this appeal -- issued orders closing the case on December 21, 2016 and again on March 21, 2017.[1] Plaintiffs appealed on June 16,

---

[1] After the only surviving claims, those of plaintiff Austin Guest, were settled, the district court entered the two orders -- on December 21, 2016 and on March 21, 2017. Both apparently resolved only Guest's claims and purported to close the case. The March 21, 2017 order was entered because Guest and defendants had not in fact finalized the settlement after the December 21, 2016 order.

When it closed the case, however, the district court did not enter a separate judgment implementing its summary judgment decision, as required by Federal Rule of Civil Procedure 58(a). *See* Fed. R. Civ. P. 58(a) ("[e]very judgment and amended judgment must be set out in a separate document," subject to certain exceptions inapplicable in this case). But plaintiffs could not have appealed in any event until all the claims, including Guest's, were resolved. *See* Fed. R. Civ. P. 54(b). Therefore, we deem plaintiffs' time to appeal to run from 30 days after the district court's March 21, 2017 order was deemed "entered," which was 150 days after entry in

2017.  On appeal, plaintiffs challenge the district court's dismissal of their false arrest,

First Amendment, excessive detention, and fair trial rights claims.[2]

We review *de novo* the district court's summary judgment ruling,

"construing the evidence in the light most favorable to the non-moving party and

drawing all reasonable inferences in her favor." *Mihalik v. Credit Agricole Cheuvreux N.*

*Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013).  A movant is entitled to summary judgment

when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

Upon review, we conclude that the district court properly granted summary judgment

to defendants on plaintiffs' claims.

## I.     False Arrest

A claim for false arrest under Section 1983 and New York law requires a

plaintiff to demonstrate that "the defendant intentionally confined him without his

consent and without justification." *Dufort v. City of N.Y.*, 874 F.3d 338, 347 (2d Cir. 2017)

(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "The existence of probable

cause to arrest constitutes justification and is a complete defense to an action for false

---

the civil docket on March 21, 2017.  *See* Fed. R. App. P. 4(a)(7)(A)(ii) (for purposes of Rule 4(a), a judgment or order is "entered" when "the judgment or order is set forth on a separate document, or 150 days have run from entry of the judgment or order in the civil docket," whichever comes first).  The June 16, 2017 notice of appeal was filed within 180 days of the March 21, 2017 order.  Hence, the appeal is timely.

[2]     Plaintiffs do not challenge the district court's dismissal of their excessive force, equal protection, due process, state law, and municipal liability claims.

arrest . . . ." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). "Probable cause exists when 'the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Marcavage v. City of N.Y.*, 689 F.3d 98, 109 (2d Cir. 2012)). To determine whether probable cause exists, "we look at the facts as the officers knew them in light of the specific elements" of the offense, *Gonzalez*, 728 F.3d at 155, considering the totality of the circumstances and "the perspective of a reasonable police officer in light of his training and experience," *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).

The offense of disorderly conduct under N.Y. Penal Law § 240.20(6) consists of the following elements: "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." *Kass*, 864 F.3d at 211 (citing N.Y. Penal Law § 240.20(6)). [3] Under the second element, refusal to obey an order is justified "only

---

[3]     The relevant text of the statute reads: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ." N.Y. Penal Law § 240.20(6).

where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *Id.* at 212 (quoting *People v. Todaro*, 26 N.Y.2d 325, 328-29 (1970)).

On this record, a reasonable jury could only conclude that the NYPD officers had probable cause to arrest plaintiffs for disorderly conduct under N.Y. Penal Law § 240.20(6). Plaintiffs do not contest that officers made several announcements ordering protesters to disperse, and that officers observed protesters locking their arms and legs together, sitting on the ground, and refusing to leave. Although some plaintiffs did not hear the officers' orders to disperse, in assessing probable cause "we look at the facts as the officers knew them," *Gonzalez*, 728 F.3d at 155, and it was objectively reasonable for the officers -- who gave multiple dispersal orders and warned protestors before arresting them -- to conclude that plaintiffs refused to comply with a lawful order to disperse in violation of N.Y. Penal Law § 240.20(6). And while plaintiffs contend that the orders to disperse were not lawful, on these facts no reasonable jury could conclude that the orders were "purely arbitrary." *Kass*, 864 F.3d at 212 (quoting *Todaro*, 26 N.Y.2d at 329).

## II.     First Amendment

### A.     Retaliation

The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory

motive.  *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012).  Because we conclude

that plaintiffs' arrests were supported by probable cause, their First Amendment

retaliation claims are without merit.

      **B.**        **Decision to Temporarily Clear Zuccotti Park**

      In public fora, "the government may apply content-neutral time, place,

and manner restrictions only if they are 'narrowly tailored to serve a significant

government interest' and if 'ample alternative channels of communication' are

available."  *Kass*, 864 F.3d at 208 (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613

F.3d 336, 341 (2d Cir. 2010) (per curiam)).  A restriction is narrowly tailored if it

"promotes a substantial government interest that would be achieved less effectively

absent the regulation" and it is "not substantially broader than necessary to achieve the

government's interest."  *Marcavage*, 689 F.3d at 106 (quoting *Ward v. Rock Against Racism*,

491 U.S. 781, 799-800 (1989)).  But a narrowly tailored restriction need not be the "least

restrictive or least intrusive means" of serving the government's interest, *id.* (quoting

*Ward*, 491 U.S. at 798), and the "requirement that 'ample alternative channels' exist does

not imply that alternative channels must be perfect substitutes for those channels

denied to plaintiffs" by the restriction, *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 101 (2d

Cir. 2006).

      Assuming, without deciding, that the First Amendment applies to

Zuccotti Park, we conclude as a matter of law that defendants' decision to temporarily

close Zuccotti Park for park rules violations was a constitutional time, place, and manner restriction. The government has a substantial interest in ensuring that its public spaces are safe and clean, *see Marcavage*, 689 F.3d at 104, and temporarily clearing the park on the day in question -- as tents and traps were being erected, with hundreds of protesters in attendance -- was a narrowly tailored means of achieving that interest.[4] Although the officers could conceivably have closed portions of the park instead, the First Amendment does not require the "least restrictive or least intrusive means." *Id.* at 106 (quoting *Ward*, 491 U.S. at 798). Moreover, plaintiffs remained free to exercise their First Amendment rights in other public fora in the vicinity or to return to Zuccotti Park after it was cleaned.

## III. Excessive Detention

A claim for excessive detention is governed by the Fourth Amendment, which "requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention" following a warrantless arrest. *Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005). Under the Supreme Court's precedent, "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement . . . ." *Id.* at 137 (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)). An arrestee can rebut the presumption of

---

[4] Zuccotti Park encompasses about one rectangular block of open space, bounded by Broadway, Cedar Street, Church Street, and Liberty Street.

constitutionality by showing that the probable cause determination was "delayed unreasonably," such as "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56.

We conclude that no reasonable jury could find that the detention of plaintiffs for 24 to 30 hours, in the circumstances here, was excessive. Their detention of less than 48 hours was presumptively reasonable. *See Bryant*, 404 F.3d at 137. Although plaintiffs contend that there was no justification to detain them once they were separated from their arresting officers, plaintiffs have not put forth any evidence to show that their release was unreasonably delayed because of "ill will," "delay for delay's sake," or officers' attempts to gather additional evidence to justify their arrests, rather than because of the "practical realities" of transporting busloads of arrestees and processing their arrests. *McLaughlin*, 500 U.S. at 56-57. Nor are we persuaded by plaintiffs' reliance on New York law, because "the Fourth Amendment does not incorporate state procedural criminal law." *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (emphasis omitted).

## IV. Fair Trial Rights

To prevail on a claim for denial of the constitutional right to a fair trial based on fabricated information, a plaintiff must demonstrate that "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's

verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

Assuming, without deciding, that a plaintiff who was never charged with an offense can state a claim for the denial of his or her constitutional right to a fair trial, we reject plaintiffs' claims on the merits. Plaintiffs failed to adduce any evidence demonstrating that they were detained as a result of the allegedly fabricated arrest paperwork, rather than their arrest for disorderly conduct. *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (plaintiff cannot state a claim for a liberty deprivation attributable to an arrest supported by probable cause, unless "the fabricated evidence causes some 'further deprivation'" (quoting *Garnett*, 838 F.3d at 277)).

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 11 -