23-900-cv
*Thompson v. Clark*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of May, two thousand twenty-four.

PRESENT:      GUIDO CALABRESI,
                   MICHAEL H. PARK,
                   SARAH A. L. MERRIAM,
                         *Circuit Judges*.

_____

LARRY THOMPSON,

     *Plaintiff-Appellant*,

       v.                                        No. 23-900-cv

POLICE OFFICER PAGIEL CLARK, Shield #28472,

     *Defendant-Appellee*,

CITY OF NEW YORK; POLICE OFFICER PAUL MONTEFUSCO, Shield #10580; POLICE OFFICER GERARD BOUWMANS, Shield #2102; POLICE OFFICER PHILLIP

ROMANO, Shield #6295; POLICE OFFICERS
JOHN AND JANE DOES 1-10; POLICE
OFFICER WARREN RODNEY, Shield
#13744; SERGEANT ANTHONY BERTRAM,
Shield #277,

     *Defendants*.[*]

_____

FOR PLAINTIFF-APPELLANT:      GREGORY CUI, Roderick & Solange MacArthur Justice Center, Washington, DC (Amir Ali, George Mills, Roderick & Solange MacArthur Justice Center, Washington, DC; David A. Zelman, Law Office of David Zelman, Brooklyn, NY, *on the brief*).

FOR DEFENDANTS-APPELLEES:      MELANIE T. WEST (Richard Dearing, Devin Slack, *on the brief*), Assistant Corporation Counsel, *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gonzalez, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 23, 2023, judgment of the District Court is **VACATED**, and this matter is **REMANDED** to the District Court for trial.

Plaintiff-appellant Larry Thompson appeals from the May 23, 2023, judgment of the United States District Court for the Eastern District of New York granting summary judgment to defendant-appellee Pagiel Clark on Thompson's claims of malicious

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

prosecution brought pursuant to 42 U.S.C. §1983. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Late on the night of January 15, 2014, Clark and other police officers arrived at Thompson's home in response to a 911 call claiming that Thompson was abusing his newborn daughter.[1] Thompson refused to let the officers into his home without a warrant, and he was arrested for obstructing governmental administration ("OGA"), in violation of New York Penal Law §195.05, and resisting arrest, in violation of New York Penal Law §205.30. The next day, Clark swore out a criminal complaint making factual allegations about the events that occurred on January 15, 2014, and formally charging Thompson with OGA and resisting arrest. As a result, Thompson was detained for two days until his arraignment, at which time he was released on his own recognizance. After arraignment, Thompson made two additional court appearances before his criminal case was dismissed.

After the criminal charges against him were dismissed, Thompson brought this civil action against Clark and the other officers who participated in his arrest and prosecution, asserting claims pursuant to Section 1983. The District Court granted summary judgment in favor of defendants as to certain claims, while other claims proceeded to trial. At trial, the District Court granted judgment as a matter of law in favor

---

[1] It was later determined that Thompson's sister-in-law, who "apparently suffered from a mental illness," *Thompson v. Clark*, 596 U.S. 36, 40 (2022), had made the call after she observed a diaper rash on the infant. Thompson was not abusing the child.

of Clark on Thompson's malicious prosecution claims. The jury found for defendants on the remaining claims.

This appeal relates solely to Thompson's malicious prosecution claims against Clark. The District Court granted judgment as a matter of law on those claims based on its finding that Thompson had failed to establish that the criminal charges against him had terminated in his favor. This Court affirmed that decision in a summary order. *See Thompson v. Clark*, 794 F. App'x 140 (2d Cir. 2020). The Supreme Court reversed, finding that Thompson had made an adequate showing of favorable termination because he needed only to show "that the criminal prosecution ended without a conviction," rather than "that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). The matter was remanded to the District Court and, on remand, the District Court granted summary judgment to Clark on the malicious prosecution claims. *See Thompson v. Clark*, 673 F. Supp. 3d 261, 265 (E.D.N.Y. 2023). This appeal followed.

"We review a district court's decision to grant summary judgment *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought." *Garcia v. Heath*, 74 F.4th 44, 47-48 (2d Cir. 2023) (quoting *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)).

To prevail on a malicious prosecution claim under federal law, a plaintiff must show at least: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, and (3) the absence of probable cause for the criminal proceeding. *See*

4

*Thompson*, 596 U.S. at 44 & n.3. To make out a claim, "a plaintiff also must demonstrate a sufficient post-arraignment liberty restraint." *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (citations and quotation marks omitted).[2]

Thompson asserts claims for malicious prosecution as to both charges brought against him – OGA and resisting arrest. We address each separately.

## I.  Obstruction of Governmental Administration Charge

At the time of Thompson's prosecution, New York law provided:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

N.Y. Penal Law §195.05 (McKinney 1998). A person "may be convicted under this statute when (1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017). The District Court found that "Defendant Clark had probable cause to charge Plaintiff with OGA even according to Plaintiff's account of the events leading up

---

[2] The Supreme Court has reserved the question of whether malice is an element of a malicious prosecution claim under §1983. *See Thompson*, 596 U.S. at 44 n.3.  If malice is required, we have held that it may be inferred from the absence of probable cause. *See Kee*, 12 F.4th at 167 n.17. We thus need not decide the question here.

to his arrest," and further that "even if Defendant Clark did not have probable cause to charge Plaintiff with OGA, he is entitled to qualified immunity based on Plaintiff's account of Plaintiff's interactions with Defendants." *Thompson*, 673 F. Supp. 3d at 269, 270-71. On appeal, Thompson contends that this was error because a reasonable jury could conclude that Clark lacked probable cause to charge Thompson with OGA, and Clark was not entitled to qualified immunity.

### A. Probable Cause

Thompson asserts that a reasonable jury could conclude that Clark lacked probable cause to charge him with OGA because Thompson neither physically interfered with a police function nor had the requisite intent to interfere. We agree.

"Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Kee*, 12 F.4th at 166 (citation and quotation marks omitted). "[P]robable cause to prosecute should not be conflated with probable cause to arrest." *Id.* Indeed, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

The undisputed evidence indicates that when officers arrived at his apartment, Thompson opened the door to speak with them and remained standing in his doorway. The officers informed Thompson that they had received a complaint that a child was being abused and needed to enter his apartment. The officers did not have a warrant. Thompson asked the officers who had made the complaint; requested to speak with a

6

supervisor to get an explanation of the situation; asked to see a warrant; and then verbally refused the officers entry into his home because they did not produce a warrant.

A reasonable jury could find that Clark lacked probable cause to charge Thompson with OGA because Thompson's actions – opening his door, standing in his doorway, speaking peacefully with officers, and verbally invoking his Fourth Amendment rights[3] – did not constitute interference. The interference "element of the statute is satisfied when an individual intrudes himself into, or gets in the way of, an ongoing police activity." *Kass*, 864 F.3d at 210 (citation and quotation marks omitted). "[T]he interference must at least in part be 'physical' and cannot consist solely of verbal statements . . . ." *Id.* at 209 (citations omitted). Further, where no use of force is involved, the interference must be "inappropriate and disruptive" to satisfy the statute. *Id.* (citations and quotation marks omitted).

The undisputed evidence does not establish, as a matter of law, that Thompson's actions constituted inappropriate physical interference sufficient to support a charge of OGA. While he continued to stand in his doorway and verbally refuse the officers entry into his home, Thompson's conduct was not inappropriate, and he did not take any affirmative steps to interfere.[4] *See In re Kendell R.*, 897 N.Y.S.2d 83, 84 (1st Dep't 2010)

---

[3] "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citation and quotation marks omitted).

[4] The District Court held that "when police officers have a lawful basis 'to enter peoples' homes' to investigate potential child abuse, a plaintiff's refusal to open the door for those officers . . . satisfies 'the physical force or interference element of the obstructing governmental administration statute.'" *Thompson v. Clark*, 673 F. Supp. 3d 261, 270

("Any physical contact between appellant and an officer was initiated by the officer. Appellant's failure to comply with the order to disperse, without more, lacked the requisite intentional physical component." (citation omitted)). Indeed, if Thompson had stepped aside to allow the officers to enter, that could have been construed as consent. *See People v. Gentry*, 193 N.Y.S.3d 389, 394 (3d Dep't 2023), *leave to appeal denied*, 40 N.Y.3d 1012 (2023) ("It is well settled that stepping aside from the door to admit the officers is enough to establish consent." (citation and quotation marks omitted)). As such, a reasonable jury could conclude that Thompson had no other practical option but to stand in his doorway while he spoke to the officers.

A reasonable jury could also conclude that Thompson did not exhibit "inappropriate and disruptive conduct at the scene." *Kass*, 864 F.3d at 209 (citation and quotation marks omitted). The parties dispute whether Thompson yelled or raised his voice during the conversation, and who initiated the physical contact between Thompson and the officers. And Thompson testified that as soon as the officers grabbed him, he submitted, telling them "[y]ou have it" to indicate that he was not attempting to resist. Joint App'x at 283. Viewing the evidence in the light most favorable to Thompson, as we are required to do, we conclude that a reasonable jury could have found that Thompson did not interfere with the officers.

A reasonable jury could also find that Thompson did not "*intend* to prevent the

_____

(E.D.N.Y. 2023) (quoting *Shaheed v. Kroski*, 833 F. App'x 868, 870-71 (2d Cir. 2020) (summary order)). But *Shaheed* is inapposite. There, the officers had a court order that was "equivalent to a search warrant for Fourth Amendment purposes." *Id.* at 870 (citation and quotation marks omitted). Here, the officers had no order or warrant.

officers from performing [their official] function." *Kass*, 864 F.3d at 210 (emphasis added). Clark argues that he could infer criminal intent from Thompson's actions, but viewing the evidence in the light most favorable to Thompson, as required at summary judgment, it does not support a finding that Thompson took actions consistent with a criminal intent to interfere. *Cf. People v. Goli*, 934 N.Y.S.2d 782, 783 (1st Dep't 2011) ("[D]efendant's failure to comply with the police directive to open the door did not evince the requisite intent to obstruct the police investigation through 'physical force or interference.'" (quoting N.Y. Penal Law §195.05)); *People v. Offen*, 408 N.Y.S.2d 914, 916 (N.Y. Crim. Ct. 1978) ("[I]t is no crime to refuse to open a door to police officers.").

The Supreme Court has explained that individuals may "stand on their constitutional rights" in such situations:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. . . . And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

*Kentucky v. King*, 563 U.S. 452, 469-70 (2011). Thus, a reasonable jury could find that Thompson's actions in opening his door to speak to the officers and asserting his Fourth Amendment rights did not support an inference that Thompson had a criminal intent to interfere. *See People v. Rodriquez*, 851 N.Y.S.2d 342, 348 (N.Y. Crim. Ct. 2008) ("Without knowledge that the police officer possessed a warrant for entry, the defendant would have had no reason to believe himself obligated to open the door. Indeed, the defendant may have reasonably believed himself entitled to exclude the officer.

9

Knowledge of the police officer's purpose and authority is necessary therefore to infer that the defendant intended to obstruct . . . .").

The undisputed evidence does not support a finding, as a matter of law, that Clark had probable cause to charge Thompson with OGA when Thompson refused officers, who lacked a warrant, entry into his home in the middle of the night.[5] Accordingly, summary judgment was not appropriate.

## B.     Qualified Immunity

Clark asserts that we may affirm the grant of summary judgment on the alternative ground that he is entitled to qualified immunity on this claim because "officers of reasonable competence could have concluded that Plaintiff's act of standing in his apartment doorway and insisting that Defendants were not permitted to enter rose to the level of OGA." *Thompson*, 673 F. Supp. 3d at 271.

But Clark has forfeited any qualified immunity defense he might have had as to this claim. Clark raised qualified immunity as a defense to Thompson's *unlawful entry* claim, but he declined to make such an argument with respect to the *malicious prosecution* claim in his first summary judgment motion, during trial, or in his motion for judgment as a matter of law. *Cf. Henderson v. Thieret*, 859 F.2d 492, 497 (7th Cir. 1988) ("[I]t is one thing to omit [a] defense altogether in the district court and quite another to

---

[5] "[T]he peculiar abrasiveness of official intrusions" into people's homes late at night has long been recognized. *United States v. Ravich*, 421 F.2d 1196, 1201 (2d Cir. 1970). The principles underlying the Fourth Amendment "apply with particular intensity when a home is searched in the middle of the night." *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011).

raise it as to one claim and yet fail to pursue it as to other claims."). Clark now asks us to excuse this failure because defendants' Answer to the operative complaint asserted in a conclusory fashion: "Defendants Clark, Montefusco, Bouwmans, Romano, Rodney and Bertram have not violated any clearly established constitutional or statutory right of which a reasonable person would have known and, therefore, is protected by qualified immunity." Answer at 12, *Thompson v. City of New York, et al.*, No. 1:14CV07349 (E.D.N.Y. Sept. 6, 2016), ECF No. 42.

Simply asserting the defense of qualified immunity in an answer is insufficient to preserve the defense; it "can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (citations omitted); *see also Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016); *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) ("A defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury."). Although we have discretion to consider the forfeited argument, *see, e.g.*, *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012), we decline to do so in this case.

## II. Resisting Arrest Charge

Thompson also asserted a malicious prosecution claim against Clark based on Clark's decision to charge him with resisting arrest. The District Court held that it could not "conclude as a matter of law, based on undisputed facts, that Defendant Clark had probable cause to charge Plaintiff with resisting arrest" and that "a reasonable jury could

11

conclude that once the officers began to arrest Plaintiff for OGA, he committed no separate act that gave Defendant Clark probable cause to charge Plaintiff with resisting arrest." *Thompson*, 673 F. Supp. 3d at 272, 273. We agree with that analysis. The District Court nonetheless granted summary judgment in Clark's favor on this claim on the theory that Thompson could not "prove a deprivation of liberty associated with [the resisting arrest] charge," because the OGA charge "was indisputably based on probable cause," and thus the restraint on Thompson's "liberty would have occurred if [he] had been charged with only OGA." *Id.* at 273.

As discussed above, the District Court erred in finding that the record established that Clark had probable cause to charge Thompson with OGA. It was therefore improper to grant summary judgment in favor of Clark on this claim when a reasonable jury could conclude that Clark lacked probable cause to charge Thompson with resisting arrest.

\* \* \* \* \*

For the reasons set forth herein, we **VACATE** the judgment of the District Court and **REMAND** this matter for trial on Thompson's malicious prosecution claims.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12